**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **WOLVERINE BARCODE IP, LLC,**<br>    **Plaintiff,**<br><br>**v.**<br><br>**CHIPOTLE MEXICAN GRILL, INC.,**<br>    **Defendant.** | **Civil Action No. 2:26-cv-00016-JRG**<br><br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Wolverine Barcode IP LLC ("Wolverine") files this First Amended Complaint and demand for jury trial seeking relief from patent infringement of the claims of U.S. Patent No. 9,280,689 ("the '689 patent") (referred to as the "Patent-in-Suit") by Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle"). This First Amended Complaitn is filed within 21 days of Defendant's Rule 12 Motion, ECF No. 16.

## I. THE PARTIES

1. Wolverine is a Texas Limited Liability Company with its principal place of business located in Austin, Texas.

2. On information and belief, Defendant is a corporation organized in Delaware with a principal office at 610 Newport Center Drive, Newport Beach, California 92660, with a regular and established place of business located at 9625 Coit Rd, Plano, TX 75024. On information and belief, Defendant sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial district. Defendant has been served.

## II. JURISDICTION AND VENUE

3.  This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271.

4.  This Court has personal jurisdiction over Defendant because: (i) Defendant is present within or has minimum contacts within the State of Texas and this judicial district; (ii) Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district; and (iii) Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this judicial district.

5.  Venue is proper in this district under 28 U.S.C. §§ 1400(b).  Defendant has committed acts of infringement and has a regular and established place of business in this District.  Further, venue is proper because Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

### III.    INFRINGEMENT - Infringement of the '689 Patent

6.  On March 8, 2016, U.S. Patent No. 9,280,689 ("the '689 patent", included as Exhibit A) entitled "Method and Apparatus for Doing Offline Commerce Transactions" was duly and legally issued by the U.S. Patent and Trademark Office. Plaintiff owns the '689 patent by assignment.

7.  The '689 patent relates to novel and improved methods and apparatuses for conducting offline transactions that use a barcode as a method of personal identification.

8.  Defendant Chipotle directly infringes at least claim 1 of U.S. Patent No. 9,280,689 under 35 U.S.C. § 271(a) by performing, and/or by directing or controlling the performance of, each step

2

of the claimed method through Chipotle's in-restaurant Chipotle Rewards purchase and redemption system, including Chipotle's mobile application, website, Chipotle Rewards accounts, Rewards member identifiers, QR/barcode displays, in-restaurant point-of-sale terminals, cash registers, barcode/QR scanners, store/POS servers, vendor servers, backend Rewards servers, and related computer online systems and servers.

9. The accused method is Chipotle's method for conducting in-restaurant/offline electronic commerce transactions using Chipotle Rewards, including transactions in which a Chipotle Rewards member presents or scans a Chipotle Rewards member ID, QR code, barcode, reward code, or other account-associated personal code at a Chipotle cash register before or during payment for goods.

10. On information and belief, Chipotle provides each Chipotle Rewards member with a personal code for use in purchasing goods and/or receiving, redeeming, or applying Chipotle Rewards benefits in connection with qualifying purchases. Such personal code includes, for example, the member's Chipotle Rewards member identifier, account-associated reward identifier, QR/barcode payload, and/or reward/promotion code associated with the member's Chipotle Rewards account.

11. On information and belief, Chipotle converts, encodes, or causes to be encoded the personal code into a machine-readable barcode or QR-code format displayed in the Chipotle mobile application or otherwise made available to the member, thereby forming a User ID Barcode corresponding to the member's personal code. The User ID Barcode includes data, formatting, prefix/suffix information, account-identifying information, metadata, QR/barcode symbology, or other special character or special code information that distinguishes it from product barcodes used for goods sold at Chipotle restaurants.

12. Chipotle stores, and causes the Rewards member to store, the personal code in User ID Barcode format for use in purchasing goods and earning or redeeming Rewards benefits. Chipotle stores the corresponding personal code, User ID Barcode data, and associated account information in Chipotle's computer online systems and servers, including Chipotle Rewards servers that function as the claimed User Vendor Management Server.

13. Chipotle establishes a User Account corresponding to the personal code by creating and maintaining a Chipotle Rewards account for each participating member in Chipotle's backend Rewards systems. The Chipotle Rewards account stores member-identifying information, Rewards member ID information, points, rewards, credits, redemption eligibility, transaction history, and other account data used to determine whether a purchase or redemption transaction is approved.

14. Chipotle deposits, credits, or causes to be credited funds, points, rewards, reward credits, stored-value benefits, or other consideration into the Chipotle Rewards account. These credited points, rewards, credits, and benefits operate as available funds and/or a credit limit for purposes of determining whether the member may redeem or apply Rewards benefits in connection with a qualifying purchase.

15. Chipotle conducts purchases at Chipotle restaurants, including restaurants in this District, using vendor cash registers, POS terminals, barcode/QR scanners, and vendor/POS servers. During such transactions, Chipotle employees, agents, POS systems, or customer-facing checkout systems scan or otherwise capture product barcode data, item-identifying data, menu-item data, and/or price data for goods being purchased, and also scan or capture the member's User ID Barcode using a barcode/QR scanner or scanner functionality at or associated with the vendor cash register.

4

16. On information and belief, the Chipotle cash register or POS terminal transmits both the product/item/price data and the User ID Barcode data to one or more Chipotle-controlled vendor servers, POS servers, store servers, or backend transaction servers. These servers receive transaction data including the vendor/store identifier, product or menu-item data, purchase price, member identifier, User ID Barcode data, and other information necessary to process the Rewards transaction.

17. On information and belief, Chipotle's vendor server or POS/backend system detects the User ID Barcode as a Rewards member identifier, distinguishes it from product barcode data, and forwards the User ID Barcode data and purchase price to Chipotle's Rewards backend servers, which constitute the claimed User Vendor Management Server.

18. Chipotle's Rewards backend servers compare the purchase price, qualifying-purchase information, reward/redemption eligibility, available points, available rewards, reward credits, or other account balance information in the Chipotle Rewards account to determine whether there are available funds, credits, points, or rewards within the account's available limit to approve earning, redemption, application, or crediting of Rewards benefits for the transaction.

19. If the Chipotle Rewards account contains sufficient available points, rewards, credits, funds, or redemption eligibility, Chipotle's Rewards backend servers send or cause to be sent an approval signal to the vendor server or POS server. The approval signal includes or causes authorization to award points, apply a reward, apply a discount, redeem a benefit, accept the Rewards member ID, or otherwise process the transaction as a valid Chipotle Rewards transaction.

20. Chipotle's vendor server or POS server forwards the approval signal to the vendor cash register or POS terminal. The vendor cash register or POS terminal then applies the approved

reward, credit, discount, point accrual, redemption, or account update and generates a receipt reflecting the approved transaction.

21. Chipotle repeats the foregoing process for subsequent Chipotle Rewards transactions using the same or another User ID Barcode associated with a Chipotle Rewards account, including subsequent in-restaurant qualifying purchases in which Rewards members scan or present their Chipotle Rewards member ID at the register.

22. Chipotle performs the claimed method directly through its own systems, servers, software, POS terminals, cash registers, barcode/QR scanners, employees, agents, and controlled instrumentalities. To the extent any step is performed by a Chipotle Rewards member, restaurant employee, affiliate, subsidiary, POS vendor, cloud provider, payment processor, Rewards processor, or other third-party service provider, that performance is attributable to Chipotle.

23. Chipotle directs and controls the performance of any customer-performed steps because Chipotle conditions participation in Chipotle Rewards and receipt of Rewards benefits—including earning points, redeeming rewards, applying rewards to qualifying purchases, and receiving valid Rewards transaction credit—on the Rewards member enrolling in Chipotle Rewards, maintaining a Rewards account, storing or accessing the Chipotle Rewards member ID or User ID Barcode, and presenting or scanning that member ID or User ID Barcode at the time and place specified by Chipotle.

24. Chipotle establishes the manner and timing of the customer-performed steps through Chipotle's Rewards terms, mobile application, website, account interface, QR/barcode display, instructions to scan before paying, instructions to scan the Chipotle Rewards member ID at the register, reward-expiration rules, qualifying-purchase rules, POS prompts, and backend processing logic. A Rewards member cannot obtain the Rewards benefit for an in-restaurant qualifying

6

purchase unless the member performs the required steps in the manner and timing established by Chipotle.

25. Chipotle directs and controls the performance of any restaurant, cashier, POS, vendor-server, or backend-server steps because those steps are performed by Chipotle employees, agents, controlled restaurant personnel, controlled affiliates, and/or service providers operating under Chipotle's contractual requirements, technical specifications, POS procedures, software rules, and Rewards processing requirements. Chipotle controls the accused Rewards infrastructure, including the format of the Rewards member ID/User ID Barcode, the account rules, the POS scanning process, the server communications, the approval/denial logic, and the transmission of approval signals back to the cash register.

26. Chipotle receives a direct monetary and commercial benefit from performance of the claimed method, including revenue from qualifying purchases, increased customer retention and engagement, collection and use of transaction and Rewards data, promotion of repeat purchases, and reduced transaction friction at checkout. But for Chipotle's design, operation, administration, and control of the Chipotle Rewards system, the claimed method would not be performed.

27. Accordingly, all steps of claim 1 are performed by Chipotle or are attributable to Chipotle under 35 U.S.C. § 271(a), and Chipotle directly infringes claim 1 of the '689 patent literally and/or under the doctrine of equivalents. Exhibit B provides exemplary, non-limiting evidence mapping Chipotle Rewards to the limitations of claim 1, including Chipotle Rewards accounts, QR/User ID Barcode functionality, scanning of the Chipotle Rewards member ID at the register, Chipotle's computer online systems and servers, points/rewards balances, qualifying purchases, and approval reflected in valid Rewards transactions.

28. Support for the allegations of infringement may be found in the the chart attached as Exhibit B.  These allegations of infringement are preliminary and are therefore subject to change.

29. **Induced Infringement.** Defendant Chipotle has induced and continues to induce infringement of at least claims 1–3 of the '689 patent under 35 U.S.C. § 271(b). At least as of service of this Complaint, including the '689 patent and the infringement chart attached as Exhibits A and B, Chipotle has had actual knowledge of the '689 patent and actual knowledge that the accused Chipotle Rewards in-restaurant scan-before-payment purchase and redemption method infringes the '689 patent.[1] Despite that knowledge, Chipotle has knowingly, actively, and specifically intended to cause others, including Chipotle Rewards members, participating customers, restaurant personnel, agents, contractors, POS/rewards technology providers, cloud/server providers, and other third-party service providers, to perform the acts that constitute direct infringement of the asserted claims, either individually or in combination with acts attributable to Chipotle as alleged above. Chipotle induces such infringement by, among other things, providing and maintaining Chipotle Rewards accounts; providing, generating, encoding, storing, and displaying Rewards member identifiers, QR codes, barcodes, reward codes, or other account-associated personal codes; instructing Rewards members through Chipotle's mobile application, website, Rewards terms, promotional materials, in-restaurant materials, and checkout interfaces to join Chipotle Rewards, access or store their Rewards member ID or QR/User ID Barcode, make qualifying purchases, and scan or present the Rewards member ID before or at the time of payment at the register; configuring, equipping, and instructing restaurant personnel and POS systems to scan or capture the Rewards member ID/User ID Barcode at the vendor cash register; and configuring Chipotle's POS, vendor-server, Rewards-server, and backend systems to

---

[1] Plaintiff reserves the right to amend if discovery reveals an earlier date of knowledge.

receive the scanned code and purchase information, detect the Rewards member ID/User ID Barcode, associate it with the member's Rewards account, compare the purchase price or qualifying-purchase information with available points, rewards, credits, funds, or equivalents, and send or cause an approval, redemption, crediting, or acceptance signal back to the vendor server and cash register. Chipotle's affirmative acts are intended to, and do, cause performance of each limitation of the asserted method claims, including the repeated use of the accused Chipotle Rewards scan-before-payment process for subsequent qualifying purchases. Chipotle receives direct commercial benefit from the induced infringement, including increased sales, customer retention, Rewards participation, transaction data, and repeat purchases.

30. **Contributory Infringement.** Defendant Chipotle has contributorily infringed and continues to contributorily infringe at least claims 1–3 of the '689 patent under 35 U.S.C. § 271(c). Chipotle offers to sell and sells within the United States, and provides as part of its revenue-generating in-restaurant purchase transactions, a material and apparatus for practicing the patented process, namely the accused Chipotle Rewards in-restaurant scanning and redemption component. That accused component includes, without limitation, the Rewards account/member-ID functionality, QR code/barcode/personal-code generation and display functionality, "scan before paying" Rewards interface, POS scanner and cash-register integration, vendor-server/Rewards-server communication logic, server-side detection of the Rewards member ID/User ID Barcode, account-balance/reward/credit comparison logic, and approval/redemption/crediting signal returned to the vendor server and cash register. This accused Rewards scanning and redemption component constitutes a material part of the claimed invention because it supplies and enables the personal code/User ID Barcode, account association, vendor cash-register scanning, vendor-server detection and forwarding, User Vendor Management Server comparison, approval signaling, and

9

repeated Rewards purchase transactions alleged to satisfy the limitations of the asserted claims. At least as of service of this Complaint, Chipotle has known that the accused Rewards scanning and redemption component is especially made or especially adapted for use in infringing the '689 patent.[2] The accused component, as configured and used for in-restaurant Chipotle Rewards scan-before-payment transactions, is not a staple article or commodity of commerce suitable for substantial noninfringing use; its ordinary, intended, and commercially meaningful use is to cause Rewards members, restaurant personnel, POS systems, vendor servers, Rewards servers, and related backend systems to perform the accused method. To avoid doubt, the accused component for purposes of this contributory-infringement allegation is not Chipotle's general-purpose mobile application, general website, general menu-ordering functionality, ordinary restaurant sales, or general-purpose POS equipment in the abstract, but the specifically configured Chipotle Rewards in-restaurant scan-before-payment identification, account-association, redemption, crediting, and approval functionality described above and in Exhibit B. Any use of that specifically configured accused component other than to perform or facilitate the accused Rewards scan-before-payment transaction is, on information and belief, unusual, far-fetched, illusory, impractical, occasional, aberrant, experimental, or not a use of the accused component as configured.

31. Defendant has caused and will continue to cause Plaintiff damage by direct and indirect infringement of (including inducing infringement of) the claims of the '689 patent.

## IV.    JURY DEMAND

Plaintiff hereby requests a trial by jury on issues so triable by right.

## V.    CONDITIONS PRECEDENT

---

[2] Plaintiff reserves the right to amend if discovery reveals an earlier date of knowledge.

32. Plaintiff has never sold a product.  Upon information and belief, Plaintiff predecessor-in-interest has never sold a product.  Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages.  Further, all conditions precedent to recovery are met.  Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

33. Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article, for or under the Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with Section 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that they were infringing any of Plaintiff's patents, including the Patents-in-Suit, and thus were not entering into the settlement license to produce a patented article for Plaintiff or under its patents.  Further, to the extent necessary, Plaintiff will limit its claims of infringement to method claims and thereby remove any requirement for marking.

34. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to either show that the alleged unmarked product does not practice the Patents-in-suit and that Plaintiff has substantially complied with the marking statute.  Defendant has failed to identify any alleged patented article for which Section 287(a) would apply.  Further, Defendant has failed to allege any defendant entity produce a patented article.

35. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented.

36. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus not require marking.  All settlement licenses were to end litigation and thus the policies of §287 are not violated.  Such a result is further warranted by 35 U.S.C. §286 which allows for the recovery of damages for six years prior to the filing of the complaint.

37. For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and defendant entity for patent infringement; (3) defendant entity did not believe it produced any product that could be considered a patentable article under 35 U.S.C. §287; and, (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. §287 for each prior settlement license.

38. Each settlement license that was entered into between the defendant entity and Plaintiff was negotiated in the face of continued litigation and while Plaintiff believes there was infringement, no defendant entity agreed that it was infringing.  Thus, each prior settlement license reflected a desire to end litigation and as such the policies of §287 are not violated.

39. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on PLAINTIFF to make an effort to require a prior settling defendant to mark the products PLAINTIFF had accused of infringing its patents.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiif prays for relief as follows:

12

a.  enter judgment that Defendant has infringed the claims of the '689 patent;

b.  award Plaintiff damages in an amount sufficient to compensate it for Defendant's infringement of the Patents-in-Suit in an amount no less than a reasonable royalty or lost profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c.  award Plaintiff an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d.  declare this case to be "exceptional" under 35 U.S.C. § 285 and award Plaintiff its attorneys' fees, expenses, and costs incurred in this action;

e.  provided discovery reveals that Defendant knew (1) knew of the patent-in-suit prior to the filing date of the lawsuit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent, declare Defendants' infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f.  a decree addressing future infringement that either (i) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patents-in-Suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and

g.  award Plaintiff such other and further relief as this Court deems just and proper.

13

Respectfully submitted,

**Ramey LLP**

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)
wramey@rameyfirm.com

*Attorneys for Wolverine Barcode IP LLC*

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to the Texas Rules of Civil Procedure, I hereby certify that all counsel of record

who have appeared in this case are being served on this day of April 30, 2026, with a copy of the

foregoing and ECF filing.

*/s/ William P. Ramey, III*
William P. Ramey, III

14