**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

WOLVERINE BARCODE IP, LLC,

        Plaintiff,

    v.

CHIPOTLE MEXICAN GRILL, INC.,

        Defendant.

Case No. 2:26-cv-00016-JRG

**CHIPOTLE MEXICAN GRILL, INC.'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF THE ISSUES.......................................................................... 4

III.    BACKGROUND .................................................................................................. 5

IV.     LEGAL STANDARD........................................................................................... 9

V.      ARGUMENT ..................................................................................................... 10

        1.      Wolverine Barcode Fails to State a Claim for Direct Infringement...................... 10

        2.      Wolverine Barcode Does Not Plausibly Identify A "User ID Barcode.".............. 14

        3.      Wolverine Barcode Fails to State a Claim for Indirect Infringement. .................. 15

VI.     CONCLUSION................................................................................................... 17

CERTIFICATE OF SERVICE ....................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) (en banc).......................................................... *passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................. *passim*

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................4, 9, 10, 16

*Bradley v. Chiron Corp.*,
   136 F.3d 1317 (Fed. Cir. 1998).......................................................................12

*De La Vega v. Microsoft Corp.*,
   No. 19-cv-612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ............................ *passim*

*Ferrer v. Chevron Corp.*,
   484 F.3d 776 (5th Cir. 2007) ..............................................................................9

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010)........................................................................16

*Gonzalez v. Kay*,
   577 F.3d 600 (5th Cir. 2009) .............................................................................9

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2016)...................................................................... *passim*

*Mullen Indus. LLC v. Samsung Elecs. Co.*,
   No. 2:24-CV-00049-JRG, 2024 WL 4870768 (E.D. Tex. Nov. 21, 2024)...................... *passim*

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018)....................................................................3, 16

<u>OTHER AUTHORITIES</u>

35 U.S.C. § 271(a) ............................................................................1, 6, 7, 9

35 U.S.C. § 271(b) ......................................................................................8

35 U.S.C. § 271(c) ......................................................................................9

Rule 12(b)(6)..................................................................................... *passim*

## I.     INTRODUCTION

The Court should dismiss Wolverine Barcode IP, LLC's ("Wolverine Barcode") First Amended Complaint ("FAC") because Wolverine Barcode fails to plausibly allege infringement, either direct or indirect. Despite being given an opportunity to amend following Chipotle's initial Rule 12(b)(6) motion, Wolverine Barcode has not cured the fatal defects in its pleading. Rather, Wolverine Barcode has simply layered conclusory assertions of "direction or control" over the same implausible infringement theory—a theory that remains fatally deficient for three independent reasons.

First, the FAC fails to plausibly allege direct infringement because the asserted method claim of U.S. Patent No. 9,280,689 ("the '689 Patent") requires multiple actors, and Wolverine Barcode does not plead facts sufficient to establish that Chipotle directs or controls its customers' performance or that Chipotle and its customers form a joint enterprise. "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). As the plain language of claim 1 reveals, certain steps—such as "providing a personal code to a person for their use to purchase goods" (step (a))—are not performed by the customer, while other steps—such as "conducting *purchases* at vendors" "storing said personal code in said user ID Barcode format *by said person*" (steps (f) and (c))—are plainly customer acts. Wolverine Barcode's own Exhibit B confirms the same division: it attributes backend processing steps to Chipotle's computer systems and servers, while attributing purchasing and scanning steps to Chipotle's customers. The FAC's newly added assertions that Chipotle "conditions participation" in Rewards and "establishes the manner and timing" of customer steps are precisely the "threadbare recitals" and "conclusory statements" that this Court and others have rejected as insufficient to state a divided infringement claim. *See Mullen Indus. LLC v. Samsung Elecs. Co.*,

**CHIPOTLE'S MOTION TO DISMISS FAC – Page 1**

No. 2:24-CV-00049-JRG, 2024 WL 4870768, at *3 (E.D. Tex. Nov. 21, 2024) (dismissing where complaint failed to allege "requisite 'direction or control' over the other actors' performance" or "the existence of a joint enterprise"); *De La Vega v. Microsoft Corp.*, No. 19-cv-612-ADA, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020); *Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016) (affirming dismissal where divided infringement was not adequately pled). That Chipotle operates a loyalty program and provides terms of participation does not, without more, establish the kind of agency, contractual obligation to perform method steps, or joint enterprise that the law demands. Every retailer with a rewards program provides instructions and conditions for participation; if that alone sufficed to attribute customer acts to the retailer, the divided infringement doctrine would be rendered meaningless. Wolverine Barcode alleges no facts showing that Chipotle's customers are contractually obligated to perform the specific claim steps, that Chipotle can enforce that performance, or that Chipotle and its customers share an equal right to a voice in the direction of the enterprise. The FAC's divided infringement theory therefore remains legally insufficient.

Second, and independently, Wolverine Barcode's direct infringement allegations are implausible because its identification of the claimed "User ID Barcode" is based on a reward coupon code rather than a persistent, user-identifying barcode. The '689 Patent claims a method in which a "personal code" is provided to a person "for their use to purchase goods," that code is converted into a "User ID Barcode" that includes "at least one special character to distinguish the barcode as a User ID Barcode from a product barcode," and the system repeats the transaction process "for subsequent purchase transactions using said User ID Barcode." *See* '689 Patent, Claim 1. Wolverine Barcode's Exhibit B identifies the "personal code" as "NMTRBLE"—a string sourced from a public Reddit post titled "choose your reward"—and claims this code is converted

**CHIPOTLE'S MOTION TO DISMISS FAC – Page 2**

into a QR code that constitutes the "User ID Barcode." *See* Exhibit B, at 1.1. But Wolverine Barcode's own exhibit reveals that "NMTRBLE" is not a persistent Chipotle Rewards member identifier; it is a reward or promotion code displayed on a "choose your reward" page, with an expiration date. *Id.* at 1.2. A reward coupon code is not the claimed "User ID Barcode"—it is not "provided to a person for their use to purchase goods" in the manner contemplated by the patent, which envisions a personal identifier (like a cell phone number or credit card number) permanently associated with the user and reused across multiple transactions. The claim requires that the method repeats "for subsequent purchase transactions using said User ID Barcode"—*i.e.*, the same barcode is used for multiple separate transactions." *See* '689 Patent, Claim 1. A single reward code tied to a specific promotion with an expiration date cannot plausibly be the "User ID Barcode" used repeatedly across "subsequent purchase transactions." Wolverine Barcode is not entitled to have unreasonable inferences drawn in its favor that are refuted by the evidence it cites in the FAC. Wolverine Barcode's own Exhibit B defeats its infringement theory.

Third, the FAC's indirect infringement claims fail because Wolverine Barcode has not plausibly alleged an underlying act of direct infringement. "It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018). Because Wolverine Barcode has failed to adequately plead that any single actor—whether Chipotle, a Chipotle customer, or anyone else—performs all steps of the asserted method, its indirect infringement claims necessarily collapse. Moreover, even if direct infringement were assumed, the FAC's inducement and contributory infringement allegations consist of nothing more than formulaic recitations of the statutory elements, wholly unsupported by factual allegations. Because Wolverine Barcode "has

**<u>CHIPOTLE'S MOTION TO DISMISS FAC</u> – Page 3**

failed to sufficiently plead direct infringement" of the '689 Patent, its "indirect infringement claims also fail." *Mullen Indus.*, 2024 WL 4870768, at *16.

The FAC's deficiencies are structural and incurable. The divided infringement problem is inherent in the claim language and Wolverine Barcode's own infringement theory. The implausibility of the "User ID Barcode" identification is revealed on the face of Wolverine Barcode's own submitted exhibit. No amount of further amendment can transform a reward coupon code into a persistent User ID Barcode or transform a standard loyalty program into the type of contractual relationship that gives rise to attribution of customer acts. The Court should dismiss Wolverine Barcode's FAC in its entirety with prejudice.

## II.    STATEMENT OF THE ISSUES

1.    Whether the FAC fails to state a claim for direct infringement under Rule 12(b)(6) because claim 1 of the '689 patent requires steps performed by different actors, Wolverine's own Exhibit B attributes customer-facing storing, purchase and scanning steps to customers rather than Chipotle, and the FAC pleads only conclusory allegations of "direction or control" or "joint enterprise" rather than concrete facts satisfying *Akamai* and related standards.

2.    Whether the FAC's direct infringement theory is implausible because it identifies the claimed "User ID Barcode" using a reward/promotion code—"NMTRBLE"—sourced from a public "choose your reward" Reddit post, rather than a persistent, user-identifying barcode capable of repeated use as "said User ID Barcode," as the patent requires.

3.    Whether the FAC's indirect infringement claims for inducement and contributory infringement must be dismissed because there is no plausibly alleged predicate act of direct infringement and, in any event, the indirect theories are limited to boilerplate recitations that do not satisfy *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), or *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

**CHIPOTLE'S MOTION TO DISMISS FAC – Page 4**

III.    **BACKGROUND**

The complaint asserts a single patent, U.S. Patent No. 9,280,689 entitled "Methods and Apparatus for Doing Offline Commerce Transactions." FAC ¶ 6, Ex. A. The patent "relates to methods and apparatus for conducting offline commerce transactions." '689 Patent at 1:17-18. The patent explains that, as of its filing in 2011, customers "currently pay for goods priced in micro payment levels, such as five cents or ten cents using cash. Such payments are not made with credit cards because the cost of the credit card transaction processing is too high, making it impractical both for vendors and credit card companies to accept the use of a credit card for micro payment purchases." *Id.* at 1:26-31. The patent claims to "introduce[] a new method for identifying a user using the User ID Barcode" which, "being captured by the cashier using the scanner available at the cash register, provides fast checkout and with limited cost to the vendor for the transaction processing." *Id.* at 2:34-35, 7:1-3. The patent includes three claims, independent claim 1 and dependent claims 2 and 3. Independent claim 1 reads:

> A method for conducting offline electronic transactions having a vendor barcode scanner and a vendor cash register comprising:
>
> (a) providing a personal code to a person for their use to purchase goods;
>
> (b) converting said personal code into barcode format to form a User ID Barcode, said User ID Barcode corresponding to said personal code and including at least one special character to distinguish the barcode as a User ID Barcode from a product barcode;
>
> (c) storing said personal code in said User ID Barcode format by said person for use to purchase goods and storing said personal code in a User Vendor Management Server to permit purchases to be made at a vendor;
>
> (d) establishing a User Account in a User Vendor Management Server corresponding to said personal code;
>
> (e) depositing funds in said User Account to establish a credit limit;
>
> (f) conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User

ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server;

(g) detecting the User ID Barcode at the vendor server and forwarding the ID Barcode and purchase price to said User Management Server;

(h) comparing the purchase price with the funds in said User Vendor Management Server to determine if there are available funds within the credit limit in the User Vendor Management Server account, and if there are, sending an approval signal to the vendor server;

(i) forwarding the approval signal to the vendor cash register; and

(i)[sic] repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode.

*Id*. at 17:31 to 18:31.

As the plain claim language indicates, certain steps such as "storing said personal code in said User ID Barcode format by said person" (step c) and "conducting purchases at vendors" (step f) are performed by customers, and other steps such as "providing a personal code to a person for their use to purchase goods" (step a) are not performed by customers.

Wolverine Barcode filed a First Amended Complaint on April 30, 2026, alleging that Chipotle directly infringes at least claim 1 of the '689 Patent under 35 U.S.C. § 271(a) "by performing, and/or by directing or controlling the performance of, each step" through "Chipotle's in-restaurant Chipotle Rewards purchase and redemption system, including the Chipotle mobile application, website, Chipotle Rewards accounts, Rewards member identifiers, QR/barcode displays, in-restaurant point-of-sale terminals, cash registers, barcode/QR scanners, store/POS servers, vendor servers, backend Rewards servers, and related computer online systems and servers." FAC ¶ 8. The accused method is Chipotle's in-restaurant scan-before-or-during-payment flow in which a Rewards member presents or scans a Chipotle Rewards member ID, QR code, barcode, reward code, or other account-associated "personal code" at the register. *Id.* ¶ 9. The FAC alleges that the "personal code" may be a Rewards member identifier, account-associated reward

**CHIPOTLE'S MOTION TO DISMISS FAC – Page 6**

identifier, QR/barcode payload, or a reward/promotion code; that Chipotle converts or encodes that personal code into a machine-readable barcode or QR format "forming a User ID Barcode" that is distinguished from product barcodes; and that Chipotle stores the corresponding personal code/User ID Barcode and account information in Chipotle's systems, including Rewards servers that purportedly function as the claimed User Vendor Management Server. *Id.* at ¶¶ 10-12. The FAC further alleges Chipotle maintains a Rewards account corresponding to the personal code and credits that account with points, rewards, credits, stored value, or other consideration used to determine approval of earning, redemption, application, or crediting of Rewards benefits in a transaction. *Id.* at ¶ 14.

To support direct infringement under § 271(a), the FAC alleges Chipotle performs the claimed method through its systems, equipment, employees, agents, and controlled instrumentalities, and that any step performed by a customer, restaurant employee, affiliate, POS vendor, cloud provider, payment processor, Rewards processor, or other third party is attributable to Chipotle. *Id.* at ¶¶ 8-22. The FAC further alleges Chipotle "directs and controls" any customer-performed steps by conditioning Rewards participation and benefits on enrolling in Rewards, maintaining an account, storing or accessing the member ID or User ID Barcode, and presenting or scanning that identifier at the time and place specified by Chipotle, and by establishing the manner and timing of customer steps via Rewards terms, the app and website, scan-before-paying instructions and register prompts, reward-expiration and qualifying-purchase rules, and backend logic; the FAC also claims Chipotle directs and controls restaurant, cashier, POS, vendor-server, and backend-server steps through employees, agents, controlled affiliates, and service providers operating under Chipotle's contractual and technical requirements. *Id.* at ¶¶ 23-28.

**CHIPOTLE'S MOTION TO DISMISS FAC** – **Page 7**

The FAC states that Exhibit B provides "exemplary, non-limiting evidence" mapping Chipotle Rewards to the limitations of claim 1, including Rewards accounts, QR/User ID Barcode functionality, scanning of the Rewards member ID at the register, Chipotle's systems and servers, balances and qualifying-purchase logic, and approval reflected in valid Rewards transactions. *Id.* at ¶ 27. In that chart, Wolverine identifies a "personal code" as "NMTRBLE," links it to a public "choose your reward" Reddit page, and asserts that Chipotle converts "NMTRBLE" into a QR code to form a "User ID Barcode," including a purported "special character 'N'" to distinguish it from product barcodes, while separately mapping the scanner and register to scanning the Chipotle Rewards member ID at the register. *See* FAC, Exhibit B. The chart equates "depositing funds" with accumulating loyalty points, "credit limit" with previously credited points and Rewards, and "approval signal" with a valid receipt, and it claims the system repeats for subsequent transactions "using said User ID Barcode," again depicting the Reddit-sourced QR as the "User ID Barcode." *Id.*

The FAC also pleads induced infringement under 35 U.S.C. § 271(b), alleging Chipotle's knowledge of the '689 Patent and the accused method at least as of service of the complaint and asserting that Chipotle knowingly and specifically intended to cause Rewards members, customers, restaurant personnel, agents, contractors, technology providers, cloud/server providers, and other third parties to perform acts constituting direct infringement, either individually or in combination with acts attributable to Chipotle. FAC at ¶ 29. As inducing conduct, the FAC points to Chipotle's provision and maintenance of Rewards accounts; generation, storage, and display of member identifiers and QR/barcodes; instructions to enroll and scan or present the member ID before or at payment; POS configuration to scan the member ID; and backend configuration to detect the member ID/User ID Barcode, associate it with an account, compare purchase

**CHIPOTLE'S MOTION TO DISMISS FAC** – **Page 8**

information with balances, and send approval back to the register. *Id.* Finally, the FAC asserts contributory infringement under 35 U.S.C. § 271(c), alleging that Chipotle offers and sells, as part of its in-restaurant purchases, a material component for practicing the patented process—the Rewards scan-and-redemption functionality—which is a material part of the claimed invention, is especially made or adapted for infringing use, and lacks substantial non-infringing uses in its configured form; the FAC alleges Chipotle knew of this status at least as of service of the complaint. *Id.* at ¶ 30.

## IV.    LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required under 12(b)(6) when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The complaint must offer more than mere "labels and conclusions" or a "formulaic recitation" of a cause of action's elements. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Instead, to survive dismissal, a plaintiff must offer "factual content" and plead factual allegations that show "more than a sheer possibility that a defendant has acted unlawfully" in order to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 557). While courts are bound to accept well-pleaded facts as true, they "***do not accept as true*** conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (emphasis added) (internal citation omitted); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

For method claims, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai*, 797 F.3d at 1022.

"[T]o meet the *Twombly/Iqbal* pleading standard for joint infringement by the combined acts of multiple parties, the complaint must plead 'facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party.'" *De La Vega*, 2020 WL 3528411, at *4 (quoting *Lyda*, 838 F.3d at 1337).

To determine whether an entity directs or controls others' performance, courts look to general principles of vicarious liability. *Akamai*, 797 F.3d at 1022. An actor may be liable for infringement if they act through an agent or contract with another to perform one or more steps of a claimed method. *Id*. "To determine whether two or more actors form a joint enterprise, courts apply a four-pronged test: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Mullen*, 2024 WL 4870768, at *2 (citing *Akamai*, 797 F.3d at 1022).

V.     **ARGUMENT**

      1.     **Wolverine Barcode Fails to State a Claim for Direct Infringement.**

Direct infringement of a method requires that all steps be performed by or attributable to a single entity, and where multiple actors are implicated, the complaint must plead facts allowing a reasonable inference that all steps are performed and either one party exercises the requisite direction or control over the other's performance or the actors form a joint enterprise. *Akamai*, 797 F.3d at 1022; *De La Vega*, 2020 WL 3528411, at *4 (quoting *Lyda*, 838 F.3d at 1337). Courts look to general principles of vicarious liability to assess "direction or control," including whether the accused entity acts through an agent or by contract with another to perform claim steps, and they

apply a four-factor joint-enterprise test requiring, among other things, an equal right to control the enterprise. *Akamai*, 797 F.3d at 1022; *Mullen*, 2024 WL 4870768, at \*2. These requirements are not satisfied by labels, conclusions, or unwarranted inferences. *Iqbal*, 556 U.S. at 678–79.

Claim 1 of the '689 Patent on its face contemplates actions by different actors, and the Court should analyze it as a divided infringement claim. *De La Vega*, 2020 WL 3528411, at \*4 (noting claim 1 "on its face plainly requires at least multiple actors"). The FAC's own pleading reinforces that structure by identifying customer-facing storing, purchasing and scanning at the register and separate server-side processing, such that some steps are inherently customer acts while others are attributed to Chipotle's systems. The FAC alleges Chipotle conducts in-restaurant transactions using POS equipment and scanners while "scan[ning] or captur[ing]" both product/item/price data and "the member's User ID Barcode" at the register, and that the POS then transmits both the product/item/price data and the User ID Barcode to Chipotle-controlled servers for detection, comparison, and approval signaling. FAC at ¶¶ 8-22. The FAC further alleges that Chipotle "repeats the foregoing process" for subsequent transactions "in which Rewards members scan or present their Chipotle Rewards member ID at the register," confirming the customers' performance of key, customer-facing steps at the point of sale. *Id.* at ¶ 21.

Exhibit B crystallizes the multiple-actor problem by expressly assigning different claim steps to different entities. For step 1(c), Exhibit B states, "Chipotle Rewards allows the person to store their "NMTRBLE" in the User ID Barcodes for use in qualifying purchases." For step 1(f), Exhibit B states, "When a person makes a purchase at a vendor, the vendor scans the product barcodes, including the menu price, and the person's Chipotle Rewards User ID Barcode at the register," and it maps the "scanner" and "vendor cash register" to "scan their Chipotle Rewards member ID at the register," which are not steps plausibly performed by Chipotle alone. The same

**<u>CHIPOTLE'S MOTION TO DISMISS FAC</u> – Page 11**

chart attributes steps such as detection, forwarding, and comparison to servers or "computer online systems," while reserving the in-store scanning and purchasing to the "person" and "vendor," thereby dividing performance of the method's steps among multiple actors. Under *Akamai*, these specific, exhibit-based attributions control over conclusory assertions and require Wolverine Barcode to plead a viable theory of attribution if it intends to proceed on divided infringement. *Akamai*, 797 F.3d at 1022; *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325–26 (Fed. Cir. 1998) (specific allegations control over inconsistent generalities).

Where multiple actors are implicated, a plaintiff must plead facts that allow a reasonable inference that one party directed or controlled the other's performance or that the actors formed a joint enterprise. *De La Vega*, 2020 WL 3528411, at *4 (quoting *Lyda*, 838 F.3d at 1337). The FAC does not meet that standard. The FAC asserts, in general terms, that "to the extent any step is performed by a Chipotle Rewards member, restaurant employee, affiliate, subsidiary, POS vendor, cloud provider, payment processor, Rewards processor, or other third-party service provider, that performance is attributable to Chipotle," without alleging facts showing agency, contractual commitment to perform specific claim steps, or any other recognized basis for vicarious liability. FAC at ¶ 22. The FAC further claims Chipotle "directs and controls" any customer-performed steps because Chipotle "conditions participation" and "establishes the manner and timing" of scanning through Rewards terms, mobile app flows, scan-before-paying instructions, register prompts, and backend logic, but it nowhere pleads facts that Chipotle's customers are obligated by contract to perform the particular method steps, that Chipotle can require or enforce their performance, or that Chipotle otherwise meets the vicarious-liability predicates for attribution under *Akamai*. FAC at ¶¶ 23-25. The same paragraphs generically claim direction and control over restaurant personnel, POS vendors, and service providers through "contractual requirements" and

**CHIPOTLE'S MOTION TO DISMISS FAC – Page 12**

"technical specifications," again without facts tethering those relationships to the performance of each specific claim step alleged to be performed by a non-Chipotle actor. *Id.*

These conclusory attributions are insufficient as a matter of law. *Lyda* affirmed dismissal where the plaintiff failed to plausibly plead direction and control or joint enterprise notwithstanding multiple actors performing claim steps, emphasizing that labels do not substitute for facts that satisfy *Twombly/Iqbal*. *Lyda v. CBS Corp.*, 838 F.3d at 1340. *De La Vega* likewise dismissed a method claim complaint that, like this FAC, relied on the activity of different actors but "fail[ed] to make even conclusory allegations of such direction, control, or joint enterprise, much less allege any facts in support of the same." *De La Vega*, 2020 U.S. Dist. LEXIS 116081, at *10. And *Mullen*, a decision from this District, dismissed where the complaint "fail[ed] to allege that Defendants have the requisite 'direction or control' over the other actors' performance" and "fail[ed] to allege the existence of a joint enterprise," underscoring that a plaintiff must plead the recognized vicarious-liability predicates with facts, not conclusions. *Mullen*, 2024 U.S. Dist. LEXIS 212596, at *8. The joint-enterprise theory is particularly untenable here because the FAC alleges no facts establishing the four *Mullen* factors, including the critical element that Chipotle and its customers share an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

Taken together, the text of claim 1 as pled and charted by Wolverine Barcode, the FAC's express allocation of customer-performed acts at the register, and the conclusory nature of the direction/control and joint-enterprise assertions compel dismissal under Rule 12(b)(6). The FAC identifies a method necessarily involving different actors and then fails to allege facts that would attribute all steps to Chipotle under recognized vicarious-liability principles or joint-enterprise elements, despite being provided an opportunity to amend. The pleading mirrors the deficiencies

**CHIPOTLE'S MOTION TO DISMISS FAC – Page 13**

that have led other courts to dismiss materially similar Wolverine Barcode complaints, and it fails for the same reasons here. *Akamai*, 797 F.3d at 1022; *Lyda*, 838 F.3d at 1340; *De La Vega*, 2020 WL 3528411, at *4; *Mullen*, 2024 WL 4870768, at *3–4. The Court should dismiss the FAC's direct infringement claim.

### 2. Wolverine Barcode Does Not Plausibly Identify A "User ID Barcode."

Second, and independently, Wolverine Barcode's direct infringement theory is implausible because its identification of the claimed "User ID Barcode" rests on a reward or promotion code, not a persistent, user-identifying barcode capable of repeated use as the claims require. The FAC expressly alleges that the "personal code" may be a "reward/promotion code," and it asserts that Chipotle "converts, encodes, or causes to be encoded" that personal code into a "User ID Barcode" that is displayed in the app and stored in Chipotle's systems. FAC at ¶¶ 10-11. Exhibit B then identifies "NMTRBLE" as the "personal code," links it to a public "choose your reward" Reddit page, and claims Chipotle converts "NMTRBLE" into a QR to form the "User ID Barcode," even positing a supposed "special character 'N'" to distinguish it from product barcodes. These allegations are facially inconsistent with the patent's description of a "User ID Barcode" derived from a user-associated identifier such as a cell phone or credit card number that is prefixed to distinguish it from product barcodes, and that is stored by the person for use to purchase goods, which is the paradigm of a persistent, account-identifying token rather than an ephemeral coupon or reward payload. '689 Patent at Abstract.

The FAC's own chart confirms the mismatch between the claim and Wolverine Barcode's theory. Claim 1 culminates in the requirement to repeat steps "for subsequent purchase transactions using said User ID Barcode," i.e., the same identifier used again across later purchases. '689 Patent at claim 1. Yet the only concrete artifact Wolverine supplies as the alleged "User ID Barcode" is the Reddit-linked "choose your reward" QR associated with the

"NMTRBLE" string—a context that, by its own terms, is promotional and reward-specific, including a stated expiration date, rather than a member's stable account ID. *See* Exhibit B at 1.2. The chart does not supply facts supporting a reasonable inference that this rewards QR is "said User ID Barcode" reused across subsequent, separate purchases; it simply repeats the claim language while pointing back to the same Reddit-sourced image. The implausibility is heightened by the source itself: the "choose your reward" page is about choosing and redeeming a reward, not about persistent account identification, which is what the patent's "User ID Barcode" demands.

Pleading standards underscore why dismissal is warranted. A complaint must allege facts that make infringement plausible, not merely recite elements or rely on unreasonable inferences. Here, Wolverine's factual materials make its inference unreasonable. A coupon or reward code displayed on a "choose your reward" page is not plausibly a personal, persistent account identifier "provided to a person for their use to purchase goods," and it is not plausibly "said User ID Barcode" used again for subsequent purchases as step 1(i) requires. Where, as here, the chart's own screenshots and links frame the accused "User ID Barcode" in a promotional context, the complaint does not cross the line from possible to plausible infringement under *Twombly/Iqbal*.

Because Wolverine's own allegations and Exhibit B materials identify a reward/promotion payload rather than a persistent, user-identifying barcode and because claim 1 requires repeated use "using said User ID Barcode," the direct infringement claim is implausible and should be dismissed under Rule 12(b)(6).

### 3.	Wolverine Barcode Fails to State a Claim for Indirect Infringement.

The FAC also fails to allege an indirect infringement claim because, among other deficiencies, Wolverine Barcode has not alleged an underlying act of direct infringement by a Chipotle customer or any other third-party actor. "It is axiomatic that there can be no inducement

or contributory infringement without an underlying act of direct infringement." *Nalco*, 883 F.3d at 1355. Here, Wolverine Barcode fails to adequately allege an underlying act of direct infringement.

Even assuming *arguendo* that direct infringement were plausibly alleged, the FAC's inducement and contributory allegations still fail because they are the sort of bare, formulaic recitations that do not meet federal pleading standards. The FAC alleges knowledge "at least as of service" and then lists generic business conduct—providing accounts and identifiers, instructing customers to join Rewards and scan before paying, configuring POS and backend systems—as supposed inducing acts, but it pleads no nonconclusory facts showing specific intent to cause acts that Chipotle knew would constitute infringement of claim 1's multi-actor method. Under *Twombly* and *Iqbal*, labels, conclusions, and unwarranted inferences do not suffice, which is exactly what the FAC offers in its inducement paragraphs.

The FAC's contributory infringement theory fares no better. Contributory infringement requires, among other things, an underlying act of direct infringement, knowledge of the patent, that the accused component is a material part of the invention and is especially made or adapted for use in infringement, and that it lacks substantial noninfringing uses. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). The FAC asserts, in conclusory fashion, that Chipotle's "in-restaurant scanning and redemption component" is a material part, is especially made or adapted for infringement, and lacks substantial noninfringing uses "as configured," but it supplies no supporting facts beyond the same claim-language parroting already undermined by Exhibit B's reward-code theory and by the multi-actor structure of claim 1. FAC at ¶ 30. Where, as here, the pleading does not plausibly allege any underlying direct infringement and offers only naked assertions on the remaining elements, contributory infringement must be dismissed under controlling precedent and basic pleading standards.

**CHIPOTLE'S MOTION TO DISMISS FAC – Page 16**

Because Wolverine Barcode has not plausibly alleged a predicate act of direct infringement and, in any event, has not pled the required knowledge and specific intent for inducement or the no-substantial-noninfringing-use element for contributory infringement with supporting facts, its indirect infringement claims should be dismissed under Rule 12(b)(6) along with its direct infringement claim.

## VI.    <u>CONCLUSION</u>

For all these reasons, Chipotle respectfully requests that the Court dismiss Wolverine Barcode's FAC in its entirety with prejudice, for failure to state a claim.

Dated: May 14, 2026

Respectfully submitted,

*/s/ Jeffrey Randall Roeser*
Timothy P. Getzoff (Pro hac vice forthcoming)
Jeffrey Randall Roeser (Texas Bar No. 24089377)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Tel.: 303-473-2700
Email: tgetzoff@hollandhart.com
Email: jrroeser@hollandhart.com

***Counsel for Defendant***

<u>**CHIPOTLE'S MOTION TO DISMISS FAC**</u> **– Page 17**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure via the Court's CM/ECF System on this 14th day of May, 2026.

/s/ *Jeffrey Randall Roeser*
Jeffrey Randall Roeser